IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THERESA MARIE SANDERS, et al.,            )
                                          )
    Plaintiffs/Counterclaim Defendants/    )
    Third-Party Plaintiffs,                )
                                          )
v.                                        )    Case No. 24-CV-258-MTS
                                          )
GRAND RIVER DAM AUTHORITY,                )
                                          )
    Defendant/Counterclaimant/             )
    Third-Party Plaintiff,                 )
                                          )
v.                                        )
                                          )
KAMO ELECTRIC COOPERATIVE, INC.,          )
et. al.,                                  )
                                          )
    Third-Party Defendants.                )

## OPINION AND ORDER

Before the Court is Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss Defendant Grand River Dam Authority's Third-Party Claim for Constructive Indemnification. (Docket No. 78). After considering the parties' briefing on the matter and the applicable caselaw, Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss is hereby **GRANTED**.

## Background and Procedural History

On May 27, 2025, Plaintiffs Theresa Marie Sanders, Adrian Kemohah Sanders, Mahada Bernadette Sanders, James P. Boese, Monica Boese, and Alysha Boese ("Plaintiffs") filed their First Amended Complaint against Defendant Grand River Dam Authority ("GRDA").[1] (Docket No. 65). Plaintiffs, members of the Osage Nation, bring several claims for relief, including quiet

---

[1] The original Complaint was filed on June 4, 2024. (Docket No. 1).

title, trespass, unjust enrichment, fraud, slander of title, injury to real property, and nuisance. *Id.* at 5-11. Plaintiffs also seek punitive damages. *Id.* at 11-12.

According to the Amended Complaint, "Plaintiffs collectively own an undivided ¾ interest in restricted title in and to the Southeast Quarter (SE/4) of Section 16, Township 21 North, Range 9 East of the Indian Base and Meridian, Osage County, State of Oklahoma[.]" *Id.* at 2. GRDA owns and maintains multiple, multi-pole electric transmission lines, which traverse a half-mile portion of the southern edge of said property. [2] *Id.* at 2-3. Plaintiffs allege that neither GRDA nor its predecessors obtained an electric line easement from Plaintiffs or their predecessors in title. *Id.* at 4. They further allege that no record exists establishing that KAMO Electric Cooperative, Inc. ("KAMO") was granted a right of way over the property, rendering KAMO's assignment of the right-of-way easement to GRDA on July 15, 1998, unlawful and invalid. *Id.* at 3-6, 8-9. Generally, Plaintiffs assert that GRDA and/or their predecessors, including KAMO, have "unlawfully and willfully maintained the Electric Lines that are now owned and operated by GRDA, since the dates of their respective construction." *Id.* at 4-5.

On June 10, 2025, GRDA filed its Third-Party Complaint against KAMO, asserting a claim for implied indemnity. (Docket No. 70). GRDA alleges that to the extent it is found liable, it is entitled to indemnity as "KAMO contracted with Plaintiffs' predecessor in interest of the right-of-way, constructed the complained of electrical line(s), and then assigned that right-of-way and electrical line(s) to GRDA." *Id.* at 6-7. According to GRDA, KAMO's activities establish a special relationship between KAMO, the parties, and these events. *Id.* GRDA maintains that

---

[2] Plaintiffs allege that these multiple, multi-pole electric lines were constructed at "an unknown point in time." (Docket No. 65 at 3). However, the first electric line was placed on the property in 1942. *Id.* at 6-7.

Plaintiffs confirmed that they are seeking damages from GRDA "in part" for KAMO's actions, and GRDA demands indemnity from KAMO for Plaintiff's damages for the time period prior to GRDA's acquisition of the right-of-way and electrical line.  *Id.* at 5, 7.

KAMO filed its Motion to Dismiss Defendant GRDA's Third-Party Complaint on July 1, 2025.  (Docket No. 78).  GRDA filed its Response on July 17, 2025 (Docket No. 92), and KAMO filed its Reply on July 23, 2025.  (Docket No. 100).  As such, GRDA's motion is ripe for review.[3]

## Legal Standard

KAMO seeks dismissal of GRDA's indemnity claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 14(a)(2)(A).  *See* 5B Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 1356 ("The motion under [Rule 12](b)(6) is available to test a claim for relief in any pleading, whether it be in the plaintiff's original complaint, a defendant's counterclaim, a defendant's crossclaim or counterclaim thereto, or a third-party claim or any other Federal Rule of Civil Procedure 14 claim.").  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6).  *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also*

---

[3] On July 17, 2025, Plaintiffs filed a Third-Party Complaint against KAMO.  (Docket No. 95). On August 5, 2025, KAMO filed its Motion to Dismiss Plaintiffs' Complaint/Third-Party Complaint Filed Against KAMO.  (Docket No. 105).  The Court addresses this motion by separate Opinion and Order.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted).  However, a court need not accept as true allegations that are conclusory in nature. *Ashcroft*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

### **Discussion**

KAMO seeks dismissal of GRDA's third-party claim for constructive indemnification under Fed. R. Civ. P. 12(b)(6), claiming GRDA has not sufficiently alleged or established primary or secondary liability under Oklahoma law to support its claim.  (Docket No. 78 at 3-4, 10-12, 15).  Specifically, KAMO argues GRDA's pleading fails to identify a statutory or common law basis for GRDA's liability as it relates to KAMO's "pre-1998 conduct."  *Id.* at 3-4, 6, 10-12; Docket No. 100 at 2-3.  It argues GRDA has not demonstrated primary liability or a legal obligation to pay damages related to such conduct.  *Id.* at 3-4, 6, 10-12; Docket No. 100 at 2-3.  KAMO further argues that the assignment in no way creates a warranty relationship or gives rise to a special relationship that would support an indemnity claim.  (Docket Nos. 78 at 10-11; 100 at 4-5).  Instead, GRDA has pled that Plaintiffs are attempting to hold it liable for KAMO's actions, which KAMO contends "amounts to a defense of alternative liability," which is not a valid basis for indemnity.  (Docket Nos. 78 at 3-4, 6, 8; 100 at 2-3).  KAMO further seeks dismissal under Fed. R. Civ. P. 14 as GRDA has not shown that Plaintiffs are holding it derivatively liable for KAMO's conduct.  (Docket Nos. 78 at 13-15; 100 at 7-8).  KAMO asserts that GRDA's claim has no basis

4

under Rule 14, as it is "[d]isguised as an indemnity claim" and merely seeks substitution of a new defendant. *Id*.

GRDA opposes KAMO's motion claiming the facts alleged in the Third-Party Complaint meet the pleading requirements of Fed. R. Civ. P. 12(b)(6) and the procedural requirements of Fed. R. Civ. P. 14. (Docket No. 92 at 3). It contends that the factual allegations and inferences to be drawn therefrom establish the existence of a special relationship between KAMO and the parties. *Id.* This special relationship, GRDA argues, supports its constructive indemnification claim against KAMO under Oklahoma law. *Id.*

GRDA further argues that both a contractual and a separate legal relationship exists between the parties sufficient to support the indemnity claim. (Docket No. 92 at 10). The contractual relationship arises out of the contract that existed between KAMO and Plaintiffs' predecessor in interest for the right of way in 1942 and 1949; the construction of electrical lines; and the assignment of the right-of-way easements and electrical line to GRDA on July 5, 1998. *Id.* As to the separate legal relationship, GRDA contends it arose out of KAMO's warranty of title in the assignment deed and its alleged breach of that warranty. *Id.* Finally, GRDA claims Rule 14's procedural requirements have been satisfied given the facts alleged by Plaintiff. (Docket No. 92 at 16). Thus, dismissal is unwarranted because Plaintiffs seek to hold GRDA constructively liable for those acts. *Id.*

### A. Implied Indemnity Claim under Oklahoma Law

In Oklahoma, indemnity exists where "one party has a primary liability or duty that requires that party to bear the whole of the burden as between certain parties." *Caterpillar Inc. v. Trinity Indus., Inc.*, 134 P.3d 881, 886 (Okla. Civ. App. 2005), quoting *Thomas v. E-Z Mart Stores, Inc.*, 102 P.3d 133, 139 (Okla. 2004). In general, a party is entitled to indemnification when "one [is]

without fault, [and] forced to pay on behalf of another." *Nat'l Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.*, 784 P.2d 52, 54 (Okla. 1989). A right to indemnity can arise in two ways: (1) contractual indemnity, or (2) implied indemnity. *Mills v. J-M Mfg. Co., Inc.*, 567 P.3d 385, 388-89 (Okla. 2025). Contractual indemnity is express and arises where a party "agrees to save another from legal consequences arising from certain conduct." *Id.* at 388; *Nat'l Union Fire Ins. Co.*, 784 P.2d at 54. Implied indemnity or noncontractual indemnity is vicarious and arises out of "a legal relationship between the parties or from equitable considerations." *Id.* However, both are premised on the existence of a legal relationship between the parties that arose before the indemnification claim. *See Nat'l Union Fire Ins. Co.*, 784 P.2d at 54-55; *White Elec. Servs., Inc. v. Franke Food Serv. Sys., Inc.*, No. 09-CV-0504-CVE-PJC, 2010 WL 1542575, at *2 n.3 (N.D. Okla. Apr. 15, 2010) (stating a legal relationship "must have existed before the potential indemnification claim arose."). Therefore, the Court must determine whether GRDA has established a pre-existing legal relationship with KAMO to support its indemnity claim under Oklahoma law.

*1. Contractual Relationship*

GRDA first argues the existence of a contractual relationship with KAMO. (Docket No. 92 at 9-10). In support, it highlights allegations that KAMO obtained invalid rights-of-way in 1942-1949 from Plaintiffs' predecessor, constructed Line 700 on the property, and subsequently assigned both the right of way and Line 700 to GRDA per the assignment deed on July 5, 1998. *Id.* Thus, the inferences to be drawn for the relationship stem from the circumstances surrounding the assignment between KAMO and GRDA in 1998.

GRDA asserts that the contractual relationship arises by virtue of the assignment agreement memorialized in the assignment deed and made pursuant to specified terms and conditions. *See*

*id.* at 10.   However, GRDA has not alleged that the deed contained or constituted an express agreement to indemnify.  *See e.g.*, *Sinclair Oil Corp. v. Texaco, Inc.,* 94 F. App'x 760, 765-68 (10th Cir. 2004) (interpreting a contract containing express provisions on indemnification); *Mills*, 567 P.3d at 388 (defining contractual indemnity as "established through a contract where one party agrees to save another from legal consequences arising from certain conduct.").   Without an express agreement to indemnify, the assignment deed itself does not establish the existence of a contractual relationship between the parties.  *See, e.g.*, *Loos v. Saint-Gobain Abrasives, Inc.*, No. CIV-15-411-R, 2016 WL 5017335, at *6 (W.D. Okla. Sept. 19, 2026) (determining only whether there was a legal relationship between the parties because there was "no express agreement" between the parties to indemnify.").

GRDA's argument that a separate legal relationship exists between it and KAMO by virtue of the assignment deed is also unsupported.  (*See* Docket No. 92 at 9-11).   Facing a similar argument, the Tenth Circuit held that a legal relationship premised on the existence of a purchase agreement between the parties was insufficient to support an indemnity claim.  *See Sinclair*, 94 F. App'x at 768-69.   It concluded the buyer and seller of real estate — "by virtue of that status alone"— did not establish the relationship required to support a claim for indemnity.  *Id.* at 769. The mere fact that GRDA and KAMO entered into an agreement for assignment of the right of way does not, in and of itself, establish the requisite contractual or legal relationship to support an indemnity claim.  However, the lack of a contractual relationship is not fatal to an indemnity claim if GRDA can otherwise establish a legal relationship with KAMO.

  2.  *Legal Relationship*

GRDA contends that KAMO's breach of the warranty of clear title establishes the separate legal relationship necessary to support its indemnity claim. (Docket No. 92 at 10).  In making this

argument, GRDA relies on the plain language of the assignment deed, which states: "ASSIGNOR [KAMO], for itself and its successors and assigns, does hereby warrant the title to the same to be free, clear, and discharged of from all former grants, charges, taxes, judgments, mortgages, and other liens and encumbrances of whatsoever nature made or suffered to be made by KAMO." (Docket No. 92 at 10). Relying on *Daugherty v. Farmers Co-op. Ass'n*, 790 P.2d 1118, 1120 (Okla. Civ. App. 1989), GRDA argues that KAMO's failure to warrant a clear title as required by the contract provides a sufficient basis for an implied indemnity claim under Oklahoma law. *Id.* at 10, 11. However, GRDA's reading of *Daugherty* is misplaced as it states an indemnity claim can arise from "either [] strict liability in tort, or breach of implied warranty of fitness."[4] *Id.* Notably, *Daugherty* did not speak in general terms covering all breach of warranty claims; instead, it discussed one specific claim: breach of implied warranty of fitness. *Daugherty* also failed to address a breach of warranty of clear title, an entirely different cause of action. Accordingly, GRDA's breach of warranty of clear title argument is unfounded and insufficient to establish a legal relationship to support its claim for indemnity.

The parties' remaining arguments rest on whether GRDA has sufficiently pled primary liability or a legal duty to Plaintiffs for which KAMO is responsible. (Docket Nos. 78 at 3-7, 10-12; 92 at 11-16). Given GRDA's failure to establish the existence of a contractual or legal relationship with KAMO, we need not reach the issue of liability as Oklahoma law has "always premised [the] right of indemnity on the understanding that a legal relationship exists between the parties." *Nat'l Union Fire Ins. Co.*, 784 P.2d at 54. Absent the requisite relationship that gives rise to a claim for implied indemnity, GRDA has not stated a plausible claim for implied indemnity

---

[4] Factually, *Daugherty* is dissimilar from the circumstances before this Court. In *Daugherty*, the court considered indemnity within a products liability claim and considered breach of warranty under the Uniform Commercial Code (UCC). *Daugherty*, 790 P.2d at 1119-21.

against KAMO.  *Chesapeake Appalachia, L.L.C. v. Cameron Intl Corp.*, No. CIV-13-1118-M, 2014 WL 7187082, at *3 (W.D. Okla. Dec. 16, 2014) (dismissing an indemnity claim under Rule 12(b)(6) where the third-party plaintiff failed to allege the existence of legal relationship that would require the third-party defendant to indemnify it).  Therefore, KAMO's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is granted.

### B.  Derivative Liability under Fed. R. Civ. P. 14

Federal Rule of Civil Procedure 14(a) permits a defending party, as third-party plaintiff, to implead a "nonparty who is or may be liable to it for all or part of the claim against it."  It is well established that impleader under Rule 14 is "proper only where the third-party defendant's liability is in some way derivative of the outcome of the main claim."  *AllTech Commc'ns, LLC v. Brothers*, 601 F. Supp. 2d 1255, 1258-59 (N.D. Okla. 2008) (citations omitted).  Thus, the third-party indemnity claim against KAMO must be derivative of Plaintiff's claims against GRDA.  *PTM Dev. Co. v. Leland*, No. 07-CV-539-CVE-SAJ, 2007 WL 4268773, at *2 (N.D. Okla. Nov. 30, 2007) (stating the third-party complaint must state a claim that is "dependent on or derivative of the plaintiff's claims.") (citations omitted).

KAMO contends GRDA's indemnity claim was improperly pled under Fed. R. Civ. P. 14 as it has not established derivative liability.  (Docket Nos. 78 at 14-15; 100 at 7).  GRDA asserts it has met the Rule 14 requirement as Plaintiffs seek to hold it constructively liable and impute damages for KAMO's alleged actions or omissions for which KAMO is "primarily negligent."  (Docket Nos. 70 at 7; 92 at 16).  Given the Court's dismissal of GRDA's indemnity claim, under Rule 12(b)(6), the Court need not conduct an analysis of Rule 14's application nor determine whether GRDA's indemnity claim was derivative of Plaintiffs' claims.  *See Wind River Constr., LLC, v. Harper Constr. Co.*, No. CIV-599-SLP, 2018 WL 9837964, at *6 (W.D. Okla. Apr. 5, 2018)

9

(discussing only the remaining claims that survived the Rule 12(b)(6) challenge under the parties' alternative basis for dismissal under Rule 14(a)(1)).

### Conclusion

For the reasons set forth herein, Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss Defendant Grand River Dam Authority's Third-Party Claim for Constructive Indemnification (Docket No. 78) is hereby **GRANTED**.  Accordingly, KAMO is hereby dismissed as Third-Party Defendant as named in GRDA's Third-Party Complaint.  (Docket No. 70).

**IT IS SO ORDERED** this 31st day of March, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT