IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THERESA MARIE SANDERS, et al., | ) | |
| | ) | |
|    Plaintiffs/Counterclaim Defendants/ | ) | |
|    Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 24-CV-258-MTS |
| | ) | |
| GRAND RIVER DAM AUTHORITY, | ) | |
| | ) | |
|    Defendant/Counterclaimant/ | ) | |
|    Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KAMO ELECTRIC COOPERATIVE, INC., | ) | |
| et. al., | ) | |
| | ) | |
|    Third-Party Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss Plaintiffs' Complaint/Third-Party Complaint Filed Against KAMO. (Docket No. 105). After considering the parties' briefing on the matter and the applicable caselaw, Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss is hereby **GRANTED**.

## Background and Procedural History

On May 27, 2025, Plaintiffs Theresa Marie Sanders, Adrian Kemohah Sanders, Mahada Bernadette Sanders, James P. Boese, Monica Boese, and Alysha Boese ("Plaintiffs") filed their First Amended Complaint against Defendant Grand River Dam Authority ("GRDA").[1] (Docket No. 65). Plaintiffs, members of the Osage Nation, brought several claims for relief against GRDA, including quiet title, trespass, unjust enrichment, fraud, slander of title, injury to real property, and

---

[1] The original Complaint was filed on June 4, 2024. (Docket No. 1).

nuisance. *Id.* at 5-11.  Plaintiffs also sought punitive damages. *Id.* at 11-12.  Additionally, Plaintiffs included allegations that prior to GRDA's ownership of certain electric lines that traverse their property, KAMO Electric Cooperative, Inc. ("KAMO") owned and maintained the electric lines and utilized certain unapproved right-of-way easements from at least 1942 until KAMO assigned the easements to GRDA in 1998.  *Id.* at 2-4.  As a result of these allegations, GRDA filed its own Third-Party Complaint against KAMO on June 10, 2025, asserting a claim for implied indemnity.[2] (Docket No. 70).

On July 17, 2025, Plaintiffs[3] filed their Third-Party Complaint Against KAMO, asserting claims for quiet title, unjust enrichment, fraud, and slander of title.  (Docket No. 95 at 5-9). Plaintiffs also seek punitive damages.  *Id.* at 10.  According to the Third-Party Complaint,[4] Plaintiffs are the "heirs of Thomas Kemohah, a full blood Osage Indian who was allotted real property in Osage County, Oklahoma" and the current owners of the subject property, which is part of the allotted land with title restricted and held in trust by the Bureau of Indian Affairs ("BIA").  *Id.* at 2.  Specifically, Plaintiffs "collectively own an undivided ¾ interest in restricted title in and to the Southeast Quarter (SE/4) of Section 16, Township 21 North, Range 9 East of the Indian Base and Meridian, Osage County, State of Oklahoma[.]"  *Id.* at 3.

---

[2] On July 1, 2025, KAMO filed its Motion to Dismiss Third-Party Plaintiff Grand River Dam Authority's Third-Party Claim for Constructive Indemnification and Brief in Support.  (Docket No. 78).  The Court addresses this motion by separate Opinion and Order.

[3] Noah Kemohah was named as a third-party plaintiff in Plaintiffs' Third-Party Complaint against KAMO.  (Docket No. 95).  On July 30, 2025, however, Mr. Kemohah filed a Notice of Dismissal, dismissing his claims against KAMO, as his interest in the property was transferred to his mother, Plaintiff Theresa Sanders.  (Docket Nos. 104, 119).

[4] The Court notes that Plaintiffs' allegations in the First Amended Complaint against GRDA are nearly identical to the allegations raised against KAMO in the Third-Party Complaint.  *Compare* Docket Nos. 65 and 95.  The Court primarily relies upon the Third-Party Complaint for its summary of factual allegations since KAMO seeks dismissal of Plaintiffs' Third-Party Complaint.

Plaintiffs allege the property is subject to two right-of-way easements, including one dated August 20, 1942, which authorized KAMO "to construct, reconstruct, renew, operate, maintain, inspect, alter, repair, and remove a 44 KV single pole transmission line" for a period of twenty years. *Id.* at 3-4. However, Plaintiffs assert the right-of-way easements acquired by KAMO, both filed October 27, 1949, were unsigned by the record landowners and never approved by the Commissioner of Indian Affairs. *Id.* They maintain that when KAMO constructed and operated the "multi-pole electric line, which transversed the southern edge of their property" in 1942 or later, it was without lawfully acquiring "the right of way from Plaintiffs or Plaintiffs' predecessors in interest[.]" *Id.* at 4-5. On July 15, 1998, KAMO assigned the electric line and right-of-way easements to GRDA. *Id.* Thus, Plaintiffs contend KAMO unlawfully and willfully maintained the electric lines "starting from the dates of construction and continuing until on or about the date of the Assignment of July 15, 1998." *Id.* at 5.

On August 5, 2025, KAMO filed its Motion to Dismiss Plaintiffs' Third-Party Complaint. (Docket No. 105). Plaintiffs filed their Response on August 19, 2025 (Docket No. 108), while KAMO filed its Reply on August 26, 2025. (Docket No. 110). The Court ordered additional briefing from the parties on the issue of standing. (Docket No. 124). Plaintiffs filed their Additional Response (Docket No. 125) on January 25, 2026, and KAMO filed its Additional Briefing on January 26, 2026. (Docket No. 126). On January 27, 2026, the Court again ordered the parties to address the standing issue. (Docket No. 127). On February 2, 2026, Plaintiffs filed their second Supplemental Response (Docket No. 129) and KAMO filed its List of Authorities (Docket No. 130). As such, KAMO's motion is now ripe for decision.

**Legal Standard**

KAMO seeks dismissal of Plaintiffs' claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). If a court lacks jurisdiction, it "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974); *see also Wright v. United States*, No. CIV-22-145-RAW & No. CIV-22-166-RAW, 2023 WL 2719434, at *7 (E.D. Okla. Mar. 30, 2023) ("Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter."). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004), quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). The party asserting subject matter jurisdiction "bears the burden of proof." *Basso*, 495 F.2d at 909.

**Discussion[5]**

KAMO 's Motion to Dismiss focuses on one issue—whether Plaintiffs owned or possessed an interest in the subject property during the time period of 1942-1998, when KAMO engaged in activities on the property. (Docket No. 105 at 5-9). KAMO argues that Plaintiffs lack standing

---

[5] Plaintiffs construe KAMO's motion as challenging their use of Federal Rule of Civil Procedure 14 to bring third-party claims. (Docket No. 108 at 4). However, KAMO's motion merely mentions that Plaintiffs did not initially allege claims against KAMO or seek leave to bring such claims. (Docket No. 105 at 5). In the Court's view, KAMO makes these points in a procedural summary and not as a challenge to Plaintiffs' use of Rule 14 to plead third-party claims. For this reason, the Court will not address this issue further.

and their claims are subject to dismissal under Rule 12(b)(1), as Plaintiffs did not own or possess any interest in the subject property before July 15, 1998, the date KAMO assigned the electrical line and right-of-way easements to GRDA. *Id.* at 6. Thus, KAMO asserts Plaintiffs cannot rely on the alleged harms to their ancestors to satisfy the "injury in fact" element of standing. (Docket Nos. 105 at 8-10; 110 at 4, 6; 126 at 3-6).

Plaintiffs respond that they have standing to bring claims against KAMO pursuant to certain federal regulations, congressional legislation, and Oklahoma law. (Docket No. 108 at 3). They assert that KAMO's liability for damages did not end in 1998 because the assignment of the easements to GRDA was void for lack of federal approval; therefore, KAMO remains bound under the easements until "released by Plaintiffs." *Id.* at 5-6; Docket No. 125 at 2-6. Accordingly, Plaintiffs maintain that their claims against KAMO are for "live, ongoing injuries [] proximately attributable to KAMO, that became injurious to all Plaintiffs [] the moment each acquired an interest in the subject property, and that will continue to cause injury to Plaintiffs until they are compensated[.]" (Docket No. 108 at 2).

Federal courts are confined to adjudicating actual "cases and controversies." U.S. Const. art. III, § 2. "[A] suit does not present a Case or Controversy unless the plaintiff satisfies the requirements of Article III standing." *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1171 (10th Cir. 2007). To establish standing, a plaintiff must meet three elements: (1) "an injury in fact—an invasion of a legally protected interest which is . . . concrete and particularized and actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court[,]" and (3) "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). The party seeking to invoke jurisdiction has the burden of establishing all three elements. *Id.* at 561. And, at the pleading stage, a plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *FW/PBS v. City of Dallas*, 493 U.S. 215, 231 (1990) (noting a plaintiff must "allege . . . facts essential to show jurisdiction[, and] [i]f they fail to make the necessary allegations, they have no standing.") (internal citations and quotations omitted). Thus, "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings but rather must affirmatively appear in the record." *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997) (quotation omitted).

**A. Plaintiffs fail to establish possession or ownership of the property from 1942-1998.**

Through its Third-Party Complaint, Plaintiffs primarily seek damages from KAMO for its conduct beginning in approximately 1942, and lasting until at least July 15, 1998, the date KAMO assigned the electric line and right-of-way easements to GRDA. (Docket No. 95 at 3-10). However, Plaintiffs do not directly address their ownership and/or possession of the subject property for that time period. Instead, they make various arguments, including that they became parties to the 1998 assignment from KAMO to GRDA, as the right-of-way easements are collateral to the assignment (Docket No. 108 at 7), and the assignment is void because it lacked federal approval and therefore KAMO is primarily liable until released by Plaintiffs. (Docket No. 125 at 3-6).

Moreover, KAMO attached four exhibits to its motion to dismiss which collectively show that Plaintiffs did not inherit their interests in the subject property until well after the 1998 assignment from KAMO to GRDA. *See* Docket Nos. 105-1 to 105-4. Plaintiffs do not challenge

these records, instead asserting that they show Plaintiffs are "the rightful owners of the subject property" as the "heirs of Thomas Kemohah."[6]  (Docket No. 108 at 2-3).  In any event, Plaintiffs seemingly concede their lack of ownership for the pertinent time period, noting in their response brief that KAMO's conduct "became injurious to all Plaintiffs [] the moment each acquired an interest in the subject property, and . . . will continue to cause injury to Plaintiffs until they are compensated[.]"  *Id.* at 2.

**B.  Plaintiffs fail to establish an injury in fact.**

To establish standing to bring their claims against KAMO, Plaintiffs must establish an injury in fact by alleging "a distinct and palpable injury to [themselves.]"  *Warth*, 422 U.S. at 501; *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) ("[A] litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.") (quotations omitted).  Plaintiffs attempt to satisfy this requirement by relying on provisions of the 1906 Osage Allotment Act ("OAA"), 34 Stat. 539, with further amendments; Article I, § 3 of the Oklahoma Constitution; and certain federal statutes addressing Indian lands. (Docket No. 108 at 4-6).  Additionally, Plaintiffs rely upon alleged harms by KAMO to their ancestors to establish standing.

*1. The OAA, Oklahoma Constitution, and federal statutes*

Under the OAA, Plaintiffs discuss the distribution of land from the Osage reservation to tribal members, the restricted nature of the allotments, and the "inalienability of all allotments owned or inherited by any Osage member[.]"  *Id.* at 4-5, citing the OAA of June 28, 1906, 34 Stat. 539, as amended Mar. 2, 1929, 45 Stat. 1478; June 24, 1938, 52 Stat. 1034; Oct. 21, 1978, 92 Stat.

---

[6] In another pleading, Plaintiffs contend the records "establish ownership of the subject property by the Plaintiffs and its restricted status as an Osage Allotment held in trust by the federal government." (Docket No. 129 at 3 n.1).

1660. However, neither the 1906 OAA nor any of its subsequent amendments establish that Plaintiffs have standing to sue under the allegations alleged in this case. Moreover, Plaintiffs' citation to the Oklahoma Constitution is also unavailing. Article I, § 3 of the Oklahoma Constitution merely forbids people inhabiting Oklahoma from claiming title to any land "owned or held by any Indian, tribe, or nation . . . until the title . . . shall have been extinguished by the United States[.]" Okla. Const. art. I, § 3. Furthermore, none of the various federal statutes cited by Plaintiffs suggest they have standing to bring claims against KAMO during a time period when they did not own or possess the property. *See*, *e.g.*, 25 U.S.C. § 323 (empowers the Secretary of the Interior to grant rights-of-way across Indian lands held in trust by the United States); 25 U.S.C. § 372 (establishes a procedure for the Secretary of the Interior to follow for ascertaining the heirs of a deceased allottee, settling the estate, sale of land, payment of sale proceeds, and depositing of funds); 25 U.S.C. § 380 (establishes the procedure for the lease of restricted allotments of deceased Indians when heirs are undetermined or in certain situations when heirs are determined and allows for proceeds from such leases to be credited to the estates of the individuals entitled to them).

        2. *Alleged injuries by KAMO to Plaintiffs' ancestors*

Based upon the allegations in the Third-Party Complaint, Plaintiffs are primarily relying on the alleged injuries to their ancestors to assert their own claims against KAMO. *See*, *e.g.*, Docket No. 95 at 4 (alleging "KAMO never acquired the right of way from Plaintiffs or Plaintiffs' predecessors in interest . . ."); 4 (alleging "[t]here is no record . . . that Plaintiffs' ancestors acknowledged, approved, or received compensation" for the right of way or easements); 6 (alleging there "is no evidence of compensation to Plaintiffs or their ancestors for the Electric Lines"); 6 (alleging that "[n]either the Plaintiffs nor their predecessors in title gave KAMO permission to enter into or remain on Plaintiffs' Property in or about 1942 when KAMO apparently

placed the first Electric Line on the property"); 8 (alleging "KAMO falsely asserted that they had obtained a right of way to the Subject Property from Plaintiffs or Plaintiffs' predecessors[.]"); 10 (alleging "KAMO had actual notice of the Plaintiffs, and Plaintiffs' predecessors, majority ownership of the Subject Property since on or about August 1, 1941[.]").   However, such allegations do not establish that Plaintiffs have suffered an injury in fact sufficient for standing. *See*, *e.g.*, *Tanner Brown v. Jewell*, 153 F. Supp. 3d 102, 110 (D.D.C. 2016) ("Courts have rejected the notion that a plaintiff can suffer an injury for purposes of constitutional standing simply by virtue of an injury suffered by her ancestors."); *In re African-American Slave Descendants Litig.*, 471 F.3d 754, 759 (7th Cir. 2006) ("When a person is wronged he can seek redress, and if he wins, his descendants may benefit, but the wrong to the ancestor is not a wrong to the descendants.  For if it were, . . . "[a] person whose ancestor had been wronged a thousand years ago could sue on the ground that it was a continuing wrong and he is one of the victims."); *Wright*, 2023 WL 2719434, at *9 (relying on both *Tanner Brown* and *In re African-American Slave Descendants Litig*. and finding plaintiff's allegations of wrongs to her ancestor, who was not a party to the action, failed to demonstrate "a concrete, particularized, actual or imminent injury in fact" and dismissing plaintiff's claim under Rule 12(b)(1)).

Accordingly, Plaintiffs have failed to establish an injury in fact for the time period in which they seek damages from KAMO by their Third-Party Complaint.  Without demonstrating an injury in fact, Plaintiffs have no standing to bring their claims against KAMO.  *See Lujan*, 504 U.S. at 561 (noting the party seeking to invoke jurisdiction has the burden of establishing all three elements); *see also Wright*, 2023 WL 2719434, at *9 ("The court notes that failure of any one of

the three elements is fatal to a finding of standing."). Therefore, KAMO's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is granted.[7]

## Conclusion

For the reasons set forth herein, Third-Party Defendant KAMO Electric Cooperative, Inc.'s Motion to Dismiss Plaintiff's Complaint/Third-Paty Complaint Against KAMO (Docket No. 105) is hereby **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(1). Accordingly, KAMO is hereby dismissed as a Third-Party Defendant as named in Plaintiffs' Third-Party Complaint. (Docket No. 95).

**IT IS SO ORDERED** this 31st day of March, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[7] KAMO also seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 14(a)(2)(A). However, the Court need not address the merits of Plaintiffs' claims, as it lacks subject matter jurisdiction under Rule 12(b)(1) based upon Plaintiffs' lack of standing. *See Wright*, 2023 WL 2719434, at *7 ("Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter."); *In re African-American Slave Descendants Litig.*, 471 F.3d at 758 ("But if the judge was correct that there is no jurisdiction, he should have dismissed the suits without prejudice and thus not decided their merits."); *see also Goings v. Sumner Cnty. Dist. Attorney's Office*, 571 F. App'x 634, 640 (10th Cir. July 3, 2014) ("[I]t is well-settled that a dismissal for failure to state a claim under Rule 12(b)(6)—which speaks to the legal sufficiency of the claim at issue—is an adjudication on the merits."), citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981).